UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN H. ROOKER,                                17-CV-603-EAW-MJR

                    Plaintiff,                          REPORT AND RECOMMENDATION

        -v-

MICHAEL E. BUDYNSKI,

                              Defendant.

_____

        This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford

pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters that a Magistrate Judge may hear

and determine and those which a Magistrate Judge may hear and thereafter file a report

and recommendation for disposition.  (Dkt. No. 9).  Presently before the Court is removing

party Optum's response to the Court's Order to Show Cause (Dkt. No. 13) regarding its

Notice of Removal (Dkt. No. 1).

## BACKGROUND

        The following background information is taken from Optum's Notice of Removal.

(Dkt. No. 1).  Plaintiff John H. Rooker commenced a negligence action against defendant

Michael E. Budynski in New York State Supreme Court, Orleans County, in 2008 (the

"State Court Action") alleging that he sustained personal injuries when the motorcycle he

was operating collided with Budynski's farm tractor.  (*Id.* ¶¶5, 9).  At the time of the

collision, Rooker was a participant in the Washington Mutual, Inc. Flexible Benefits Plan

(the "WaMu Plan"), an employee welfare benefit plan governed by the Employee

Retirement Income Security Act ("ERISA"). (*Id.* ¶6).[1] The WaMu Plan paid Rooker $47,195.31 in medical benefits relating to injuries he suffered in the collision. (*Id.* ¶7).

Optum, as successor to Ingenix Subrogation Services, is the subrogation/reimbursement agent for the WaMu Plan. (*Id.* ¶¶2-3). During the pendency of the State Court Action, Optum advised defense counsel that if Rooker were to obtain a recovery in the State Court Action, Optum would seek to obtain out of that recovery the cost of the medical benefits that the WaMu Plan previously paid to Rooker. (*Id.* ¶10). According to Optum, "[i]t is well-settled that the terms of an ERISA plan can create an equitable lien by agreement on the tort recovery of a plan participant." (*Id.* ¶13). In 2015, Rooker and Budynski agreed to settle the State Court Action, but they made the settlement contingent upon extinguishment of the purported lien asserted by the WaMu Plan. (*Id.* ¶11). In 2017, Rooker applied for (and the state court judge granted) an order requiring Optum to show cause why the state court should not issue an order extinguishing the WaMu Plan's purported lien. (*Id.* ¶¶1, 12). Rooker served the order to show cause on Optum, after which Optum removed the entire State Court Action to this Court on the basis that the enforceability of the lien is governed by federal law, specifically, ERISA. (*Id.* ¶¶1-3, 13-16).

After Judge Wolford referred the case to this Court, the Court held a status conference on December 5, 2017 at which it questioned whether Optum properly removed the State Court Action to this Court and whether the Court has subject matter jurisdiction over the dispute. (Dkt. No. 8). At the request of the parties, the Court

---

[1] According to Optum, the banking subsidiaries of Washington Mutual were acquired by JPMorgan Chase in 2008, and in connection with the acquisition, participants in the WaMu Plan became eligible to transition into the JPMorgan Chase U.S. Benefits Program. (Dkt. No. 1 (Notice of Removal) ¶8).

permitted them to engage in limited discovery regarding the lien dispute. (*Id.*). At the next status conference on May 4, 2018, Rooker informed the Court that the parties were still conducting discovery regarding the lien. (Dkt. No. 11). Rooker further stated that in the event the lien is deemed valid, he and Budynski likely will be unable to settle the State Court Action given that he would have to hand over a substantial portion of the settlement proceeds to Optum. (*Id.*). At the third and final status conference on June 4, 2018, Rooker informed the Court that he would like to proceed with motion practice to determine the validity of the lien. (Dkt. No. 12). The Court again expressed its concern regarding the propriety of removal and the existence of subject matter jurisdiction, and it thus entered an Order to Show Cause requiring Optum to address the following issues:

1. Does Optum have standing to remove the State Court Action to this Court given that Optum is not a defendant in the State Court Action?

2. If Optum lacks standing to remove the State Court Action to this Court, does this Court have the authority to *sua sponte* remand the State Court Action?

3. Is Optum's lien claim ripe such that the Court has subject matter jurisdiction over the claim?

4. If the Court has jurisdiction over the lien claim, does the Court also have jurisdiction over the underlying State Court Action?

(Dkt. No. 13). Optum thereafter filed a memorandum of law addressing the foregoing issues (Dkt. No. 15), and Rooker (Dkt. No. 17) and Budynski (Dkt. No. 18) filed response papers. Optum then filed a reply. (Dkt. No. 19). The Court will address each issue in turn.

**DISCUSSION**

I. *Does Optum have standing to remove the State Court Action to this Court given that Optum is not a defendant in the State Court Action?*

Under 28 U.S.C. §1441(a), a "defendant" may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Optum is not a named defendant in the State Court Action — rather, it entered the case through an order to show cause filed by Rooker. Optum argues, however, that the order to show cause constitutes an independent civil action — in particular, a special proceeding under New York law — and that as a respondent to the special proceeding, it is a "defendant" for purposes of the removal statute. (Dkt. No. 15 (Optum Memo. of Law) at 3-8); *see Sears Roebuck & Co. v. Glenwal Co.*, 325 F. Supp. 86, 88-89 (S.D.N.Y. 1970) (finding respondent to a special proceeding to be a defendant for purposes of the removal statute), *aff'd*, 442 F.2d 1350 (2d Cir. 1971).

Under New York law, "[a] special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion." *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849(PKC), 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010) (internal quotation marks and citation omitted); *see also CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (describing special proceeding under New York law). "Like an action, it ends in a judgment, but the procedure is similar to that on a motion." *Colonial Inv. Mgmt. LLC*, 2010 WL 4159276, at *2 (internal quotation marks and citation omitted). A special proceeding is commenced in New York State court by filing a petition. *See* N.Y. C.P.L.R. §304(a). Here, however, Rooker never filed a petition in state court — he instead filed an order to show cause, which essentially is a

motion seeking relief against Optum in the form of an order extinguishing the purported lien. (*See* Dkt. No. 1-1 (Rooker's order to show cause)); N.Y. C.P.L.R. §2214(d) (providing that an order to show cause may be served in lieu of a notice of motion).[2]

Although Rooker's order to show cause is a motion, not a special proceeding, a motion may in certain instances constitute an independent action that may be removed to federal court under §1441(a). *See Fox & Horan v. Beiny*, No. 92 Civ. 2067(LJF), 1992 WL 168261, at *1 (S.D.N.Y. June 29, 1992); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012) (noting that 28 U.S.C. §1441(a) "has long been interpreted to allow removal only of 'independent suits' but not ancillary or 'supplementary' proceedings"); *Wimbledon Fin. Master Fund, Ltd. v. Sage Grp. Consulting Inc.*, No. 17 Civ. 6563(AT), 2017 WL 6034649, at *2 (S.D.N.Y. Nov. 21, 2017) (acknowledging distinction between independent and ancillary proceedings for purposes of removal statute).[3] "Whether a particular state judicial procedure qualifies as a separate action is not an all-or-nothing proposition." *Travelers Prop. Cas.*, 689 F.3d at 724. "It depends on the context of each case in which it arises." *Id.* Because removability is a question of federal law, "the labels the case had in the state court . . . are not determinative." *Labertew v. Langemeier*, 846 F.3d 1028, 1031 (9th Cir. 2017) (quoting *Swanson v. Liberty*

---

[2]     Relying on N.Y. C.P.L.R. 403(d), Optum argues that a special proceeding "may be commenced . . . by an order to show cause in lieu of a notice of petition." (Dkt. No. 15 (Optum Memo. of Law) at 4). Contrary to Optum's argument, a special proceeding is commenced by filing a petition, not a notice of petition or an order to show cause. N.Y. C.P.L.R. 304(a). A notice of petition (or an order to show cause, if granted by the state court), is simply a document that is served along with the petition that gives the respondent notice of the time and place of the hearing on the petition and the supporting affidavits, if any, that accompany the petition. N.Y. C.P.L.R. 403.

[3]     Like many of the cases discussing the distinction between independent and ancillary suits, *Wimbledon Financing Master Fund, Ltd.* involved the removal of a state garnishment proceeding to federal court. In finding the garnishment proceeding in that case to be ancillary to the primary action and thus not subject to removal, the *Wimdledon* Court noted the lack of Second Circuit precedent regarding the distinction between independent and ancillary actions, at least in the context of removal of garnishment proceedings. 2017 WL 6034649, at *2, 4.

*Nat'l Ins. Co.*, 353 F.2d 12, 13 (9th Cir. 1965)); *see also Travelers Prop. Cas.*, 689 F.3d at 724 ("[T]he state's own characterizations of the proceeding are not decisive.").

Here, although the State Court Action had only one case number before the state court, it actually consists of two independent actions — Rooker's negligence action against Budynski (the "Personal Injury Action") and Rooker's order to show cause against Optum which, in effect, seeks declaratory relief regarding the validity of the purported lien (the "Declaratory Judgment Action"). *See Labertew*, 846 F.3d at 1031 (fact that state court proceeding has only one case number does not mean it constitutes only one action for purposes of the removal statute). The Court agrees with Optum that the Declaratory Judgment Action is independent from the Personal Injury Action such that Optum has standing to remove it to this Court under §1441(a). Unlike the Personal Injury Action, which is between Rooker and Budynski and involves a negligence claim arising out of a motor vehicle accident, the Declaratory Judgment Action is between Rooker and Optum and involves the enforceability of a lien pursuant to an employee welfare benefit plan. *See Travelers Prop. Cas.*, 689 F.3d at 725 (stating that a state court proceeding is independent for purposes of the removal statute when it presents a genuine dispute against a new party and raises new issues of fact and law). Thus, because the Declaratory Judgment Action is independent from the Personal Injury Action, Optum has standing to remove the Declaratory Judgment Action to this Court.

Regarding removal of the Personal Injury Action, it appears that when Optum removed the Declaratory Judgment Action to this Court, it removed the Personal Injury Action along with it. Indeed, Optum's Notice of Removal does not differentiate between the Personal Injury Action and the Declaratory Judgment Action — it simply seeks

removal of the entire State Court Action. (*See* Dkt. No. 1 (Notice of Removal) "Wherefore" Clause). The Personal Injury Action should be remanded to state court for lack of subject matter jurisdiction because it does not involve a federal question, *see* 28 U.S.C. §1331, and Rooker and Budynski are not diverse parties, *see* 28 U.S.C. §1332. *See* 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Both Optum and Budynski agree that the Personal Injury Action should be remanded on this basis. (Dkt. No. 15 (Optum Memo. of Law) at 3; Dkt. No. 18 (Budynski Resp.) ¶¶2-4).

II. *If Optum lacks standing to remove the State Court Action to this Court, does this Court have the authority to sua sponte remand the State Court Action?*

The State Court Action is comprised of two independent actions — the Personal Injury Action by Rooker against Budynski and the Declaratory Judgment Action by Rooker against Optum. As discussed under Points I and III herein, both actions should be remanded to state court not for lack of standing, but for lack of subject matter jurisdiction.

III. *Is Optum's lien claim ripe such that the Court has subject matter jurisdiction over the claim?*

At the outset, the lien claim is actually an independent action brought by Rooker against Optum seeking a declaratory judgment regarding the validity of the purported lien. Optum characterizes the action as a claim for declaratory relief brought pursuant to federal law — specifically, ERISA's civil enforcement provisions, 29 U.S.C. §1132(a)(1)(B). (Dkt. No. 15 (Optum Memo. of Law) at 10); *see* 28 U.S.C. §1331. The issue then is whether the Declaratory Judgment Action is ripe such that the Court has subject matter jurisdiction over the dispute. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500,

514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

The statute authorizing the declaratory judgment remedy, 28 U.S.C. §2201(a), "incorporates . . . the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). "[T]here is an 'actual controversy' ripe for review where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Millennium Pipeline Co., L.L.C. v. Seggos*, 288 F. Supp. 3d 530, 541 (N.D.N.Y. 2017) (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)). That liability in the declaratory judgment action may be contingent does not necessarily make the action unripe. *See Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). In such instances, the Court must focus on "the practical likelihood that the contingenc[y] will occur." *Id.* (internal quotation marks and citation omitted).[4]

The dispute between Rooker and Optum concerns whether or not the WaMu Plan creates a lien on any funds Rooker might recover in the Personal Injury Action. The existence of the lien — and, thus, Rooker's requested relief in the Declaratory Judgment Action — is contingent upon Rooker ultimately obtaining a settlement or judgment in the Personal Injury Action. The practical likelihood of either event occurring is unclear at this time. While it is true that Rooker and Budynski previously reached a settlement in the

---

[4] "Even where the case or controversy requirement is met — that is, even when subject matter jurisdiction exists — a court may nevertheless decline to hear a declaratory judgment action in an exercise of discretion." *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012). The Court need not reach this issue here because the case and controversy requirement is not met for the reasons discussed herein. *See id.* at 358-59 (recognizing that if there is no actual controversy, then there is no discretionary action for the court to take).

Personal Injury Action, they made the settlement contingent upon Optum's purported lien being found invalid, a hotly contested issue for which Rooker has asked the Court to hold motion practice. Due to the dispute over the validity of the lien, the Court cannot say that there exists a practical likelihood the Personal Injury Action will settle. Although Optum argues that a ruling regarding the validity of the lien will assist Rooker and Budynski in settling the Personal Injury Action (Dkt. No. 15 (Optum Memo. of Law) at 18), such a ruling would be a mere advisory opinion, which is not permitted under the case or controversy requirement. *See Town of Deerfield v. F.C.C.*, 992 F.2d 420, 427 (2d Cir. 1993) ("One facet of the case-or-controversy requirement is that an Article III court is not permitted to render advisory opinions."). Similarly, there does not exist a practical likelihood that Rooker will obtain a judgment against Budynski in the Personal Injury Action. The parties informed the Court at the prior status conferences that liability in that action is contested and cannot be resolved short of trial, meaning there is no way to predict how the case might turn out. *See Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. at 366 (finding case unripe where there was "no way to predict" the outcome of the related action). "[W]here a court is being asked to declare who should get the proceeds of a hypothetical judgment based on a hypothetical outcome in a separate pending litigation, courts generally hold that the case or controversy requirement is not satisfied." *Id.* at 363. Moreover, were the Court to adjudicate the Declaratory Judgment Action prior to the conclusion of the Personal Injury Action, its adjudication could be rendered moot in the event Rooker loses the Personal Injury Action, as there would be no recovery for the lien to attach to. The distinct possibility of mootness further demonstrates that the Declaratory Judgment Action is lacking "sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187, 191 (S.D.N.Y. 1984) (finding case unripe where judgment could be rendered moot by outcome of related litigation).

*Cognetta v. Bonavita* is illustrative. No. 17-CV-3065(ARR)(RML), 2018 WL 2744708 (E.D.N.Y. June 7, 2018). There, members of an employee benefit plan commenced a negligence action in state court seeking to recover for injuries suffered in an automobile accident, including injuries for which they had already received compensation from their employee benefit plan. *Id.* at *2-3. While the state court case was pending, the plan commenced suit against the plan members in federal court seeking a declaratory judgment that the plan has an equitable lien or constructive trust in the amount of benefits paid against any award or settlement the plan members might recover in the state court action. *Id.* at *1. Unlike the instant case, the plan members in *Cognetta* had already prevailed on the issue of liability in the state court action, making it "probable" that they would eventually recover a judgment or settlement in that case. *Id.* at *11-12. Given the plan members' likelihood of recovering funds subject to the purported lien, the district court found that the plan's request for a declaratory judgment regarding the lien was indeed ripe for adjudication. *Id.*

Unlike *Cognetta,* it is far from "probable" that Rooker will obtain a settlement or judgment in the Personal Injury Action. Due to the uncertainly regarding the outcome of the Personal Injury Action, Rooker's request for a declaratory judgment as to whether or not the WaMu Plan creates a lien on any funds he might recover in that action is not ripe, and the Court thus lacks subject matter jurisdiction over the Declaratory Judgment Action.

Because subject matter jurisdiction is lacking, the Declaratory Judgment Action should be remanded to state court. 28 U.S.C. §1447(c); *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994) (explaining that an unripe case removed from state to federal court should be remanded, not dismissed).

IV. *If the Court has jurisdiction over the lien claim, does the Court also have jurisdiction over the underlying State Court Action?*

As discussed above, the State Court Action is comprised of two independent actions — the Personal Injury Action and the Declaratory Judgment Action. Both actions should be remanded to state court for lack of subject matter jurisdiction. *See* 28 U.S.C. §1447(c).

## CONCLUSION

The State Court Action that Optum removed to this Court is comprised of two independent actions — the Personal Injury Action by Rooker against Budynski and the Declaratory Judgment Action by Rooker against Optum. The Court lacks subject matter jurisdiction over both actions. Consequently, it is recommended that both actions be remanded to state court pursuant to 28 U.S.C. §1447(c).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Wolford, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Wolford.

***Failure to file objections, or to request an extension of time to file objections,
within fourteen days of service of this Report and Recommendation WAIVES THE
RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health
& Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law,
and/or evidentiary material which could have been, but were not, presented to the
Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale
Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall
specifically identify the portions of the proposed findings and recommendations to which
objection is made and the basis for each objection, and shall be supported by legal
authority." ***Failure to comply with these provisions may result in the District Court's
refusal to consider the objection.***

**SO ORDERED**.

Dated:      August 24, 2018
            Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge